EXHIBIT A TO
AMENDED COMPLAINT

LAW OFFICES
KRONENBERGER & ASSOCIATES
220 MONTGOMERY STREET, SUITE 1920
SAN FRANCISCO, CALIFORNIA 94104

P: 415.955.1155
F: 415.955.1158
WWW.KRONENBERGERLAW.COM

December 5, 2005

Michael P. Angelini, Esquire
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156

VIA FACSIMILE 508-798-3537, Confirmed by First Class Mail

**RE:   St. Matthew's University v. Saba University, Dr. Fredrick, Dr. Hough, *et. al.*;
Calculation of Damages**

Dear Mr. Angelini:

In our last phone conversation on December 1, I stated that I would provide more details to you on the issue of damages. Generally on the issue of damages, our client has compelling reasons to pursue this case through the lifting of the seal, full discovery and judgment against your clients and the other named defendants. The false and misleading information that your clients have disseminated has inflicted great harm and will residually cause damages some years into the future.

As a leading example, the National Association of Advisors for the Health Professions (NAAHP) is an organization of over 900 health professions advisors at colleges and universities throughout the United States; the adviser members of the NAAHP are the individuals providing advice to students throughout the United States deciding on medical schools to which to apply. The NAAHP has endorsed and approved AAIMG, and the aaimg.com website, multiple times to its members in writing and at conferences, during which time the aaimg.com website was being operated under false pretenses and disseminating false and damaging information about our client.

As a second example, several hospital clinical sites have terminated our client's clinical programs, specifically citing the aaimg.com website, resulting in a loss of crucial rotation placement opportunities, and damaging St. Matthew's reputation in the academic and clinical communities.

As a third example, our investigations indicate that your clients acted to interfere with St. Matthew's accreditation process before the Medical Board of California, resulting in the denial of our client's application to its significant detriment. The impact of this is far-reaching, as the actions of the Medical Board of California have caused other states to question the accreditation of our client.

In addition to such targeted fraud, as a final example, we know that your clients, under the guise of AAIMG, have for <u>years</u> conducted email and postal-mailing campaigns directed towards prospective medical students and their families, loan providers, hospitals, clinical affiliates, and advanced education advisors, disseminating misleading and fraudulent information purposefully designed to injure our client in those parties' eyes.

We are quite certain that full discovery as to these matters will only serve to reveal further fraud and misconduct on the part of your clients to an even greater extent than that already established.

The purpose for citing these examples is to explain the great incentive St. Matthew's has in publicly exposing the fraudulent nature of AAIMG and identifying the specific individuals who have actively promoted AAIMG's fraud over the years. Conversely, any calculation of damages to be paid to St. Matthew's pursuant to a confidential settlement under the present seal must take into account the benefit our client would necessarily forgo of a public vindication of the injuries inflicted upon its reputation.

In our phone conversation you commented that any settlement must take into consideration the ability of the defendants to pay. While I agree that this is an important consideration, I do not have any information or other reference points regarding your clients from which to draw any conclusions about their ability to pay. The damages to our client are significant and to an extent quantifiable at this point, as reflected in my initial demand letter and further detailed below. On the issue of the ability to pay, however, I cannot do anything but defer to you to address this issue as it relates to my client's present expectations.

**<u>Timing of Damages</u>**

You specifically requested more information on the issue of the timing of damages incurred by my client. On this issue there are generally three categories of damages, based on liability under the Lanham Act and the other causes of action, that align with certain time periods.

First, there are damages that resulted from AAIMG's misleading statements about Saba/MUA and the industry, without revealing the true source of such statements, which wrongfully bolstered the standing of your client's medical schools at a relative cost to that of St. Matthew's. The damages in this category may have begun to incur as early as 1997, at the time of the founding of our client as a medical school.

It is clear that damages began to accrue at least as of the 1999 launch of the aaimg.com website. The website initially gave our client only "provisional approval," claiming that our client was deficient in over 25% of the purported criteria. Shortly thereafter, your clients moved our client into the deficient category on the aaimg.com

website, citing "significant deficiencies," and your clients maintained this negative categorization until the recent efforts of our office to bring the website down.

The launch of the website was preceded, however, by prior tortious conduct on the part of your clients giving rise to damages, in the form of postal mail campaigns directed at hospital clinical sites, loan providers and other key industry organizations. These letters, like the aaimg.com website, falsely lauded Saba University/MUA and wrongfully disparaged its competitors, without revealing the true source of such statements, with the aim of improving Saba Univeristy/MUA's reputation in the community at the cost and to the detriment of competing institutions. An example of such a letter, predating the launch of the aaimg.com website, is attached to the amended complaint as Exhibit I.

The forgoing types of damages, greatly magnified by further fraudulent acts, continue to accrue to the present day, and by their nature will continue into the future, with potentially increasing effect, regarding all aspects of St. Matthew's business to include various accreditation proceedings.

### Types of Damages

Regarding the types of damages, our amended complaint lists the following:

- damage to worldwide reputation;
- loss of applicants and student enrollment – past, present and future;
- interference with accreditation proceedings, past, pending and future;
- damage to relationships with affiliate teaching hospitals;
- damage to relationships and contracts with student loan providers;
- damage to accreditation and license standing; and
- denials of clinical and residency placements for St. Matthew's hard-working medical students and graduates.

The effects of the defendant's misconduct upon the NAAHP cannot be understated in this matter. The NAAHP has given is imprimatur to AAIMG and the supposed substantial value of AAIMG to the population of pre-med advisers in the United States. This imprimatur has been in writing in its journal, in references to AAIMG in at least two NAAHP conferences, and in handouts at those conferences. As an organization that provides guidance to the hundreds or pre-med advisers throughout the United States, NAAHP's actions to embrace the misleading and fraudulent "findings" of AAIMG have caused a great amount of harm. And the effects of this harm will extend years into the future.

## **Quantifiable Damages; Punitive Damages**

As one component of the measure of damages, we have calculated the loss incurred as a result of each student who did not enroll in St. Matthew's as a result of the defendants' actions. After factoring in yearly attrition rates and a conservative growth rate over the next five years, we calculate that the defendants' actions will result in the total loss of over 1000 students in the time period from 1999 to 2010, assuming the seal is never lifted. This figure of 1000 students reflects a range of between 35 and 180 students per year not enrolling in St. Matthew's during this time period as a proximate result of the defendants' targeted efforts to mislead the public and to defame our client in its academic reputation. This loss in student enrollment alone translates to lost revenue of over $91 million, and lost profit of over $32 million.

A second component of the estimated damages is the injury to St. Matthew's reputation and goodwill resulting from the defendants' misleading statements about and defamation of St. Matthew's directed at hospitals, educational advisors, clinical programs, and in the academic community, separate and apart from loss of student enrollment.

A third and significant component are those damages attributable to the defendants' role in St. Matthew's accreditation proceedings before the Medical Board of California, and the resultant effect on other accreditation proceedings. These state accreditations are hugely valuable assets to St. Matthew's as an institution, and it is entitled to compensation for the wrongful denial of those assets resulting from the defendants' misconduct.

A fourth component of damages St. Matthew's may seek at trial is the disgorgement of profits and benefits wrongfully acquired by the defendants as a result of their unlawful and tortious actions, including any improper or undue influence exerted in the course of any of Saba University's accreditation proceedings. This measure of damages is separate and apart from any measure of actual damages incurred by St. Matthew's, and promises to prove to be a very significant sum.

Over and above any of the above listed types of damages are the punitive damages, quite possibly as a multiple of actual damages, most certainly supported by the intentional and fraudulent misconduct alleged in the present action.

Our offer of $50 million is far below what we could obtain in the form of a judgment. That said, I do recognize ability to pay as a legitimate concern, even though I do not have knowledge of relevant information that would allow me to factor that into our damages calculations. I defer to you on this issue of the ability to pay, and I do hope that this letter will facilitate a productive discussion on settlement of this matter.

As always, I may be reached at (415) 955-1155, ext. 114, or at karl@kronenbergerlaw.com.

Thank you,

KRONENBERGER & ASSOCIATES

*[signature: Karl S. Kronenberger]*

Karl S. Kronenberger