```
Page: 1 Document Name: untitled

 CMD                           MSG
(978 632 6836 061)    AUG 05 05 *CSR      P     1      4           GDNR 1FR
 PATRICIA HOUGH                                 PSO  1

                                                               978 632-6836
 978 632-6836           061         GDNR                       05 8-8-05
                        1FR                         ACCOUNT              BD
             PCL    LOCL
             NLST   (SPNL) HOUGH, P                 I 6-8-98
             LA     74 EDGELL, GARDNR, MA+ 01440    I 6-8-98
                    ---BILL
             BN1    PATRICIA HOUGH                    6-8-98
             BA1    74 EDGELL                         6-8-98
             PO     GARDNER MA 01440                  6-8-98
             BIR    MLR
             LB     01000
             PAH    01-96
             PNP    978 632-1838 PRS
             STI    LDEV, LSSA 03-17-00
             SS              PH, N                    6-8-98
                    ---RMKS

   RP     NOTATION                       TYPE PN   ACT  FU   BD
                                                             0805            +


Date: 8/25/2005 Time: 9:59:17 AM
```

VERIZON LEGAL COMPLIANCE
1095 AVENUE OF THE AMERICAS
ROOM 2900
NEW YORK, NY 10036 - 6704
888-483-2600

September 22, 2005

KRONENBERGER & ASSOCIATES
220 MONTGOMERY STREET SUITE 1920
SAN FRANCISCO, CA 94104

CERTIFICATION OF RECORDS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I hereby certify that I am the custodian of records, or another qualified individual, acting on behalf of the business identified below, In that capacity, I certify the following:

Attached are the original or duplicate of telephone records for Subpoena/Order dated: 8-15-05

The records were made at or near the time of the occurrence of the matters contained in the records by equipment or facilities dedicated for that purpose.

The records were made and kept in the regular course of the company's business and were retained as a regular practice of the company's business.

I affirm under the penalties of perjury that the matters and facts in the foregoing certification are true to the best of my knowledge, information, and belief.

_D. Devine_
Signature                                            Date: August 25, 2005

D . Devine
Special Assistant

Sworn to and subscribed before me on September 22, 2005

_Jacqueline C. Hendy_
Notary Public

JACQUELINE C. HENDY
Notary Public, State of New York
No. 01HE6096962
Qualified in Bronx County
My Commission Expires
August 11, 2007

GREENBERG TRAURIG LLP
Ronald D. Green, Jr. (Bar No. 7360)
3773 Howard Hughes Parkway, Ste. 500 N
Las Vegas, Nevada 89109
Tel: (702) 792-3773
Fax: (702) 792-9002

KRONENBERGER & ASSOCIATES
Karl S. Kronenberger (CA Bar No. 226112) (*Pro Hac Vice*)
Terri R. Hanley (CA Bar No. 199811) (*Pro Hac Vice*)
220 Montgomery Street, Suite 1920
San Francisco, California 94104
Tel: (415) 955-1155
Fax: (415) 955-1158

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD., a Cayman Islands company,<br><br>Plaintiff,<br><br>vs.<br><br>ASSOCIATION OF AMERICAN INTERNATIONAL MEDICAL GRADUATES, INC., a Nevada corporation; THOMAS MOORE, M.D. a.k.a. "presaaimg@hotmail.com," an individual; SARAH B. WEINSTEIN a.k.a. "execsecaaimg@hotmail.com," an individual; and RACHAEL E. SILVER, an individual,<br><br>Defendants. | Case No. CV-S-05-0848-RCJ(LRL)<br><br>DECLARATION OF RECORDS CUSTODIAN<br><br>TO BE FILED UNDER SEAL |

IN CONNECTION WITH THE RULE 45 SUBPOENA SERVED HEREWITH, this "Declaration of Records Custodian" is hereby made and submitted for the purpose of the authentication of the documents and information produced in response thereto.

# DECLARATION OF RECORDS CUSTODIAN

The undersigned Custodian of Records declares and answers questions as follows:

1. State your name, job title, place of employment, and address.

   Name: DENNIS DEVINE

   Title: SUBPOENA CLERK

   Employer: _____

   Address: VERIZON COMMUNICATIONS
   CORPORATE SECURITY
   1095 AVENUE OF AMERICAS
   ROOM 2900
   NEW YORK, NEW YORK 10036

2. In your employment, do you have custody or control of records, documents and information sought in the subpoena served herewith?

   ☑ Yes.   ☐ No.

3. Were these records prepared in the ordinary and regular course of business, at or near the time of the event, act or correspondence?

   ☑ Yes.   ☐ No.

4. Have any changes or alterations in these records been made since the date of origination?

   ☐ Yes.   ☑ No.

5. Have you provided complete and true copies of the originals of these records?

   ☑ Yes.   ☐ No.

6. Have you omitted any records, documents, or other information responsive to the subpoena served herewith that is in the possession, custody or control of the party to whom that subpoena is directed (or its attorneys or agents)?

   ☐ Yes.   ☑ No.

If "yes," please identify with specificity any and all documents omitted:

2

DECLARATION OF RECORDS CUSTODIAN

1 | I declare under penalty of perjury under the laws of the United States that the
2 | foregoing is true and correct to the best of my knowledge.

Dated: 8-31-05

SIGNED:
*Dennis Devine*

Name: DENNIS DEVINE
Title: SUBPOENA CLERK

**Exhibit E**

**Excerpts from FREDRICK deposition**

Page 1

Volume I
Pages 1 - 173

COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.                    Superior Court
                                  Civil Action No. 02-0776-A

DAVID H. GILL, M.D.,
    Plaintiff,

vs.

JANICE MAGLIACANE, JOHN DOE,
and EDUCATION INFORMATION
CONSULTANTS, INC.,
    Defendants.

\* \* \* \* \* \* \*

DEPOSITION of DAVID FREDRICK, Ph.D., called as a witness by counsel for the Plaintiff, pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Rachel Marie Grady, CSR No. 146900-S, Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, taken at the offices of MIRICK, O'CONNELL, DeMALLIE & LOUGEE, LLP, 100 Front Street, Worcester, Massachusetts, on October 27, 2004, commencing at 10:22 A.M.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
FLYNN REPORTING ASSOCIATES
Professional Court Reporters
One Exchange Place
Worcester, Massachusetts 01608
(508) 755-1303  \*  (617) 536-2727

TOLL FREE: (888) 244-8858
FAX:       (508) 752-4611
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
 1
    APPEARANCES:
 2
    MIRICK, O'CONNELL, DeMALLIE & LOUGEE, LLP
 3  BY:  Robert L. Hamer, Esq.
    100 Front Street
 4  Worcester, Massachusetts 01608-1477
    for the Plaintiff.
 5
 6
    BOWDITCH & DEWEY
 7  BY:  Michael P. Angelini, Esq.
    311 Main Street, P.O. Box 15156
 8  Worcester, Massachusetts 01615-0156
    for the Defendants Education Information
 9  Consultants, Inc., and David Fredrick, Ph.D.
10
11  O'CONNOR AND RYAN, P.C.
    BY:  Harry D. Quick, III, Esq.
12  61 Academy Street
    Fitchburg, Massachusetts 01420-7517
13  for the Defendant Janice Magliacane.
14
15
16
17
18
19
20
21
22
23
24
```

Page 5

```
 1              S T I P U L A T I O N S
 2              It is stipulated by and between
 3   counsel for the respective parties that the deposition
 4   transcript will be read and signed by the deponent
 5   within thirty (30) days of receipt of the transcript
 6   under the pains and penalties of perjury.  The filing
 7   and the notarization are hereby waived.
 8              It is further agreed that all
 9   objections, except as to the form of the question and
10   motions to strike, are reserved until the time of
11   trial.
12              DAVID FREDRICK, having been
13   satisfactorily identified and duly sworn by the Notary
14   Public, was examined and testified as follows:
15                   DIRECT EXAMINATION
16   BY MR. HAMER:
17        Q.   State your name, please.
18        A.   David Fredrick.
19        Q.   Where do you live, Mr. Fredrick?
20        A.   7590 Manasota Key, Englewood, Florida.
21        Q.   Do you have any other residences?
22        A.   Yes.
23        Q.   Where?
24        A.   In Gardner, Massachusetts.
```

Page 6

```
 1        Q.   What's the address there?
 2        A.   74 Edgell Street.
 3        Q.   Do you have any other residences?
 4        A.   No.
 5        Q.   Where are you employed?
 6        A.   Education Information Consultants.
 7        Q.   Where is that located?
 8        A.   Gardner, Mass.
 9        Q.   And the address?
10        A.   63 Walnut Street.
11        Q.   Do you have any employment other than
12   Education Information Consultants?
13        A.   No.
14        Q.   Do you use any office facilities other than
15   at 63 Walnut Street?
16        A.   I'm not quite sure I understand that.
17        Q.   You testified that you have an office at 63
18   Walnut Street in Gardner, correct?
19        A.   Yes.
20        Q.   Do you have any other offices?
21        A.   No.
22        Q.   Do you have occasion to use any other
23   offices in the course of your business?
24        A.   Occasionally.
```

Page 173

1  COMMONWEALTH OF MASSACHUSETTS
2  Worcester, ss.
3
            I, Rachel M. Grady, Certified Shorthand
4  Reporter and Notary Public duly commissioned and
   qualified in and for the Commonwealth of
5  Massachusetts, do hereby certify that there came
   before me on the 27th day of October 2004, the person
6  hereinbefore named, who was by me duly sworn to
   testify to the truth and nothing but the truth of
7  their knowledge touching and concerning the matters in
   controversy in this cause; that they were thereupon
8  examined upon their oath, and their examination
   reduced to typewriting under my direction and that the
9  deposition is a true record of the testimony given by
   the deponent.
10
            I further certify that I am neither
11 attorney nor counsel for, nor related to or employed
   by, any of the parties to the action in which this
12 deposition is taken, and further that I am not a
   relative or employee of any attorney or counsel
13 employed by the parties hereto or financially
   interested in this action.
14
            In Witness Whereof, I have hereunto set my
15 hand and affixed my seal this 12th day of November
   2004.
16
17
                     _Rachel M. Grady_
18                   Notary Public
                     My Commission Expires:
19                   August 9, 2007
                     CSR No. 146900-S
20
21
22
23
24

# Exhibit F

## Cases Published in the Westlaw System

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1986 WL 2616 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
SPARTAN CHEMICAL COMPANY, INC. and Spartan Chemical Company, S.A.R.L., Plaintiffs,
v.
ATM ENTERPRISES OF AMERICA, et al., Defendants.
No. 83 C 2444.

Feb. 20, 1986.

MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.
*1 In this action, plaintiffs' have charged defendants with misappropriation of plaintiffs' trade dress on bottles of germicidal toilet bowl cleanser in violation of Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), the Illinois Deceptive Trade Practices Act, ILL.REV.STAT. ch. 121 1/2 , §§ 311-314, and the laws of Saudi Arabia. Of particular interest to the court is Count II of plaintiffs' second amended complaint in which plaintiffs charge one defendant, The ATM Enterprises of America ("ATM"), with a violation of Section 43(a) of the Lanham Act. ATM has moved to dismiss Count II of the complaint or, in the alternative, for partial summary judgment. For the reasons set forth in this memorandum opinion, ATM's motion to dismiss is granted.

I

The court will address first ATM's motion to dismiss Count II of the complaint. ATM argues that Count II should be dismissed either because this court does not have subject matter jurisdiction over the Lanham Act claim or because plaintiffs have failed to state a cause of action for misappropriation of trade dress. The court will address each of ATM's contentions in turn.

Because this is a motion to dismiss, the court is confined to consideration of the facts as stated in the complaint. For purposes of a motion to dismiss, the allegations of the complaint are assumed to be true. *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978). A complaint will not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 46 (1957).

Plaintiffs are the Spartan Chemical Company, Inc. ("Spartan Ohio"), an Ohio manufacturer of cleaning compounds, and the Spartan Chemical Company, S.A.R.L. ("Spartan Lebanon"), a Lebanese corporation engaged in the manufacture and sale of cleaning compounds in various Middle Eastern countries. Spartan Ohio has a 25 per cent financial interest in Spartan Lebanon. In addition, Spartan Ohio has granted Spartan Lebanon a license to manufacture and to sell cleaning compounds, in the Middle East, that are allegedly the proprietary products of Spartan Ohio. Defendant ATM is an Illinois corporation engaged in the distribution and sale of cleaning compounds in the Middle East.

In 1958, Spartan Ohio began to manufacture and sell a germicidal toilet bowl cleanser. The cleanser was packaged in plastic bottles carrying the trade dress at issue here. Spartan Ohio's trade dress included a blue trapezoid displaying the words "Germicidal Bowl Cleanse" and some text. In 1981 and 1983, Spartan Ohio altered the trade dress on the cleanser sold in the United States and certain foreign countries.

In 1974, pursuant to an agreement with Spartan Ohio, Spartan Lebanon began to sell Spartan Ohio's germicidal toilet bowl cleanser in Lebanon and certain other countries in the Middle East. The cleanser sold by Spartan Lebanon carried the trade dress used by Spartan Ohio with several alterations. Those alterations included adding the term "Flash" to

the words ◆Germicidal Bowl Cleanse◆ displayed in the blue trapezoid and translating the text into Arabic. In either 1974 or 1975, Spartan Lebanon began to sell cleanser in Saudi Arabia using the same trade dress as was being used in Lebanon. Spartan Lebanon has sold over 2 million quarts of cleanser in Saudi Arabia.

**\*2** In 1981, ATM began manufacturing a germicidal bowl cleanser for resale in Saudi Arabia and other countries in the Middle East. ATM's cleanser was packaged in a plastic bottle with a trade dress that is allegedly very similar to plaintiffs' trade dress. Plaintiffs allege that ATM copied and misappropriated plaintiffs' trade dress. Plaintiffs allege further that ATM's misappropriation of plaintiffs' trade dress has caused Saudi Arabian consumers to be confused as to the source of the cleansers.

As stated previously, ATM has challenged this court's subject matter jurisdiction over plaintiffs' Lanham Act claim. Under the Lanham Act, federal district courts have subject matter jurisdiction over ◆all actions arising under◆ the Act. 15 U.S.C. § 1121. Section 43(a) of the Act provides a civil right of action against any person who, having misappropriated another's trade dress, affixes the misappropriated trade dress to goods and who ◆shall cause such goods ... to enter into commerce.◆ 15 U.S.C. § 1125(a). ◆Commerce◆ is defined in the Act as ◆all commerce which may lawfully be regulated by Congress.◆ 15 U.S.C. § 1127.

ATM argues that plaintiffs do not allege that they have an exclusive right in the United States to the trade dress at issue here. Further, ATM argues plaintiffs do not allege that plaintiffs and ATM compete in the United States and consequently there is no possibility of United States consumers being confused as to the source of the product. Rather, the allegations relate exclusively to consumer confusion in Saudi Arabia. Therefore, ATM concludes, plaintiffs have not alleged misappropriation of any trade dress used in commerce subject to regulation by Congress.

The extraterritorial reach of the Lanham Act is not an altogether unfamiliar issue for the federal courts. The leading case on the issue is *Steele v. Bulova Watch Co.,* 344 U.S. 280 (1952). In *Bulova,* the Bulova Watch Co., owner of the trademark ◆Bulova◆ in the United States, sued Steele for trademark infringement and unfair competition. The Bulova Watch Co. produced, advertised and sold watches in both the United States and foreign markets. Steele, an American citizen, assembled and sold, only in Mexico, watches stamped with a ◆Bulova◆ mark. Steele had registered the trademark ◆Bulova◆ in Mexico, but his registration was cancelled before the case reached the Supreme Court. The parts for Steele's watches were manufactured in Switzerland and United States. Some of Steele's watches filtered through the Mexican border and into the United States. The Supreme Court found that Congress could constitutionally regulate activities of American citizens while on foreign soil. The Court held that a federal district court has subject matter jurisdiction over ◆acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States.◆ 344 U.S. at 281.

Following the *Bulova* decision, the federal courts have devised a list of factors that must be considered when determining the extraterritorial application of the Lanham Act. Those factors are: (1) whether the defendants' conduct has an effect on United States commerce; (2) whether the defendant is a citizen of the United States; and (3) whether there exists a conflict with foreign law. See *American Rice, Inc. v. Arkansas Rice Growers Coop Ass'n.,* 701 F.2d 408, 414 (5th Cir.1983); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 427-28 (9th Cir.1977). But see *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 642 (2d Cir.), cert. denied, 352 U.S. 871 (1956) (effect on United States commerce must be ◆substantial◆).

**\*3** In *American Rice, Inc. v. Arkansas Rice Growers Coop Ass'n.,* 701 F.2d 408 (5th Cir.1983), the Fifth Circuit Court of Appeals considered these factors in conjunction with facts similar to those presented here. In *American Rice,* both parties were farmers' marketing cooperatives, located in the United States, that processed, milled, packaged and marketed rice for their members. Both sold rice in domestic and foreign markets. Plaintiff was the owner of a trademark, ◆Abu Bint◆, used only on bags of rice marketing in Saudi Arabia. Defendant used an allegedly infringing mark on bags of rice it marketed only in Saudi Arabia. Neither the plaintiffs' nor the defendant's mark was used within the United States.

The Fifth Circuit held that a federal court would have subject matter jurisdiction over plaintiff's claim under the Lanham Act. The court found that defendant's processing, packaging, transporting and distributing of rice were activities within commerce subject to regulation by Congress. 701 F.2d at 414-15. That defendant's unlawful activities were consummated in a foreign country was viewed by the court as having no consequence. *Id.* at 415. *See also Steele*

v. Bulova Watch Co., 344 U.S. 280, 287 (1952).

In cases where a court has found that it did not have subject matter jurisdiction under the Lanham Act, one or more of the relevant factors were missing. For example, in C-Cure Chemical Co. v. Secure Adhesives Corp., 571 F.Supp. 808 (W.D.N.Y.1983), the court found that subject matter jurisdiction did not exist when defendant was a Canadian citizen and exercising jurisdiction posed a conflict with Canadian trademark law. Id. at 821. Similarly in American White Cross Laboratories, Inc. v. H.M. Cote, Inc., 556 F.Supp. 753 (S.D.N.Y.1983), the court found that the Lanham Act did not have extraterritorial application over a Canadian citizen who's application for trademark registration in Canada had a reasonable prospect of success. Id. at 757.

Reviewing the relevant factors in conjunction with the facts here, the court finds that ATM, being an Illinois corporation, is an American citizen. Following the American Rice decision, this court finds also that because ATM applied the allegedly misappropriated trade dress to its cleanser while in Illinois, ATM's activities have an effect on commerce subject to regulation by Congress. Finally, nothing in plaintiffs' complaint or in the memoranda submitted by ATM indicates that exercising jurisdiction over this action poses a danger of conflicting with Saudi Arabian law. The court therefore holds that it has subject matter jurisdiction over plaintiffs' Lanham Act claim against ATM.

ATM also has moved to dismiss Count II of plaintiffs' second amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ATM has not clearly stated in what manner it contends Count II is deficient. ATM indicates, however, that one of its contentions is that plaintiffs have failed to allege secondary meaning in their trade dress.

*4 In Dave Grossman Designs, Inc. v. Bortin, 347 F.Supp. 1150 (N.D.Ill.1972), a case with which ATM's attorney is surely acquainted, the court considered a motion to dismiss directed at a misappropriation of trade dress claim under Section 43(a). The court stated:
In its Lanham Act claim, the plaintiff contends that its coloring, packaging, display designs, and sales brochures all have been copied by the defendants so as to create confusion among potential customers as to the origin of the goods. This, it claims violates § 1125(a) of Title 15 of the United States Code. As several courts have held that allegations of this sort to state a claim under Section 43(a) of the Lanham Act, it is clear that the second cause of action cannot be dismissed on its face.

Id. at 1157 (citations omitted). The allegations of plaintiffs' Lanham Act claim here are comparable to the allegations in Dave Grossman. The Dave Grossman court, however, did not discuss the necessity of pleading secondary meaning.

Trademark infringement and misappropriation of trade dress bear certain similarities. Trademarks and trade dress both serve the purpose of aiding consumers in their choice of goods by identifying the source of goods. Cf. Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1429 (7th Cir.1985) (trademarks). In both trademark infringement and misappropriation of trade dress cases, �the wrong involved is diverting trade from the first user by misleading customers who meant to deal with him.� S.C. Johnson & Son v. Johnson, 116 F.2d 427, 429 (2d Cir.1940) (L. Hand, J.). This �wrong� is accomplished by adopting a mark or trade dress similar to that of the prior user and thereby inducing consumers to purchase the imitator's goods when the pruchaser intended to purchase the goods of the prior user. Both causes of action, trademark infringement and misappropriation of trade dress, consequently require that the plaintiff prove a likelihood of confusion by prospective purchasers as to the source of the goods. See, e.g., Menley & James Laboratories, Ltd. v. Approved Pharmaceutical Corp., 438 F.Supp. 1061, 1066 (N.D.N.Y.1977).

Both trademarks and trade dress may be �weak� or �strong.� In the realm of trademarks, for example, descriptive terms and geographic place names are weak marks in that alone they do not inherently identify a particular product. Through extensive use by one company, however, purchasers associate the weak mark with the product. Consumers, thus, come to recognize the mark as identifying the source of the product. See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 702 (5th Cir.1981), cert. denied, 457 U.S. 1126 (1982). Such consumer association and identification is known as �secondary meaning.� See, e.g., Gimix, Inc. v. J S & A Group, Inc., 699 F.2d 901, 907 (7th Cir.1983).

On the other hand, a trademark may be �strong.� Examples of strong marks are arbitrary or fanciful terms. Arbitrary or fanciful terms do not inherently connote anything in particular. When used in conjunction with a particular product, therefore, such terms are �naturally understood by the consuming public as designations of origin....� Walt-West Enterprises, Inc. v. Gannett Co., Inc., 695 F.2d 1050, 1057 (7th Cir.1982). Because consumer identification is the