## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **DAVID L. FREDRICK,** | Case No. 06-CV-00052-DBH |
| Plaintiff, | |
| vs. | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR TRANSFER AMENDED COMPLAINT** |
| **ST. MATTHEW'S UNIVERSITY (CAYMAN LTD.),** | |
| Defendant. | |

**I.      INTRODUCTION**

Plaintiff David L. Fredrick ("Fredrick")'s Memorandum in Opposition to Motion to Dismiss or Transfer Amended Complaint ("Opposition" or "Op.") sets forth no rationale for litigating these matters in Maine, a state where no party is located and in which no wrongdoing is alleged to have taken place. Nor does it attempt to contest the lengthy string of factors articulated by defendant St. Matthew's University ("SMU") in support of its choice of a Nevada venue. Because Fredrick has given this Court no reason to initiate duplicative litigation, this Court should grant SMU's Motion to Dismiss or Transfer Fredrick's Amended Complaint ("Motion" or "Mo.").

Distilled to its essence, Fredrick's Opposition posits two arguments against SMU's Motion: (1) that the court ("Nevada Court") overseeing the parallel action in Nevada ("Nevada Action") lacks jurisdiction over him; and (2) that Maine is a more convenient forum on account of SMU's relationship with Maine-based St. Joseph's College ("SJC"). To the extent Fredrick's jurisdictional argument is cognizable as a "special circumstance" justifying disregard of the first-to-file rule, however, it is based only on Fredrick's assumption that the Nevada Court will dismiss him – an unlikely event in light of the Nevada Amended Complaint's allegations of Fredrick's wrongdoing by, through and in relation to the Nevada Corporation. (*Id*. at Exh. A ¶¶ 12-18.) Fredrick's forum nonconveniens argument fares worse still, given that its entire foundation – SMU's relationship with SJC – suggest inconvenience only to SMU, which already has consented to the venue of the Nevada Court. In any event, Fredrick already has argued before the Nevada Court that the proper venue for this litigation is either <u>Florida or Massachusetts</u>. (SMU's Request for Judicial Notice of Court Documents, District of Nevada ("Request"), Ex. C at p. 9.) This Court should view with skepticism any contrary representation by Fredrick in this action. *See S.E.C. v. Happ* ("*Happ*"), 392 F.3d 12, 20 (1st Cir. 2004) (holding that purpose of judicial estoppel is to prevent party from using intentional self-contradiction to gain an unfair advantage in different forums).

Nevada has an overwhelming interest in this litigation. The wrongdoing at issue is alleged to have been conducted, by Fredrick and other defendants, by and through a Nevada corporation ("Nevada Corporation"), the formation of which appears to have been effected by means of perjured Nevada filings filed by individuals claiming to be located in Nevada. (*See* Mo. at 7:8-20 and 8:8-19.) Maine, by comparison, has no interest in this litigation, since no party to this or the Nevada Action is located in Maine, and since no wrongdoing is alleged to have taken place here. At the time he filed his initial complaint in this action, Fredrick knew that SMU's allegations in the Nevada Action provided no basis for this Court's exercise of jurisdiction over himself or any of the other 11 defendants. The filing of this duplicative and manipulative action amounts to an abuse of federal declaratory relief – a factor that, in-and-of-itself, justifies dismissal of Fredrick's amended complaint ("Fredrick Amended Complaint"). *North Shore Gas Co. v. Salomon Inc.* ("*North Shore*"), 152 F.3d 642, 647 (7th Cir. 1998)

Lacking as it did any reasonable basis in law or fact, Fredrick's decision to file an action before this Court must be viewed as an exercise in gamesmanship, intended to distract SMU from the Nevada Action, cost SMU money, and – perhaps most importantly – waste SMU and this Court's time. For that reason, and for Fredrick's failure to state a justiciable claim, this Court should grant SMU's Motion, including by imposing against Fredrick Rule 11 sanctions requiring Fredrick to, among other things, reimburse SMU's attorneys' fees and other reasonable costs incurred in defending this needless and duplicative action.

## II. FREDRICK PROVIDES NO BASIS TO DISREGARD THE FIRST-TO-FILE RULE

Fredrick invites the Court to disregard the first-to-file rule, but provides no basis for it to do so. Indeed, given the purpose of the first-to-file rule – to prevent duplicative actions designed to waste judicial resources – it is hard to imagine a more appropriate application than this case. *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st

Cir.1987).

### A. Fredrick Should Be Estopped From Arguing the Convenience of Maine, Given His Representation in the Nevada Action That Venue is Proper in Florida or Massachusetts

Fredrick argues at length that the proper forum for this litigation is Maine. That position, however, directly contradicts Fredrick's representation in the Nevada Action that venue is proper in *Florida or Massachusetts*. (Request, Ex. C at p. 9.) Fredrick has yet to profit in either court from his self-contradictory (and self-serving) arguments. Thus, the principle of judicial estoppel is technically inapplicable. Still, the record leaves little doubt that Fredrick's opinion as to the proper venue of this litigation varies with his immediate procedural goals. Accordingly, this Court should view Fredrick's convenience analysis – in fact, his entire Opposition – with skepticism. *See Happ*, 392 F.3d at 20 (holding that a party should not benefit from intentional self-contradiction in different forums).

### B. Fredrick's Objection to the Nevada Court's Jurisdiction Does Not Constitute a "Special Circumstance"

Fredrick argues that his objection to the Nevada court's personal jurisdiction amounts to a "special circumstance" under the first-to-file rule. But he provides no legal authority for that proposition. Furthermore, the purported basis for Fredrick's jurisdiction argument – that the Nevada complaint's "fail[ure] to allege any specific actions claimed to have been taken by Fredrick in Nevada or elsewhere in furtherance of the alleged actions of any other defendant" (Op. at 4: 18-20), – ignores the Nevada Amended Complaint's extensive allegations that Fredrick and other defendants formed the Nevada Corporation for the purpose of conducting, and that he then proceeded to conduct, their defamatory and fraudulent activities. (Request, Exh. A at ¶¶ 12-18.) The

better remedy for the Nevada Court's supposed lack of personal jurisdiction over Fredrick is a motion to dismiss the Nevada Action as to Fredrick, which motion Fredrick already has filed, and which issue should be left to the judgment of the Nevada Court.

### C. Fredrick's Does Not Contest That There Was No Race to the Courthouse

Fredrick asserts that his counsel's December 2005 discussions with SMU's counsel are inapposite to a first-to-file analysis, since SMU's primary counsel is located in San Francisco and not Nevada. (Op. at 5: 3-14.) The obvious import of those discussions, however, is not the location of SMU's primary counsel when he conducted them but the fact that they informed Fredrick of the Nevada action – if no sooner – three months before Fredrick filed this action. Accordingly, Fredrick cannot argue that there was a race to the courthouse.

### D. Any Inconvenience – Fredrick Has Shown None – Would Be Visited on SMU, Which Waived Its Objection to a Nevada Forum By Filing There

Fredrick argues that the "balance of convenience" tilts in favor of litigating these issues in Maine. But he fails to identify any wrongdoing that occurred in Maine, or any wrongdoers or evidence of wrongdoing located here. Fredrick hypothesizes that, as a result of SMU's relationship with SJC, witnesses and documents in Maine "will be directly relevant to whether or not the challenged statements are defamatory or have harmed SMU's reputation." (Op. at 6:22-24.) But Fredrick provides no support for that hypothesis – e.g., by showing that SMU's prospective students and other constituents are located in, or come from, Maine, or by identifying any documents or individual witnesses located in Maine. In any event, it cannot seriously be contested that any inconvenience associated with litigating this case at a distance from any such

documents or witnesses would be visited not on Fredrick *but on SMU*, which already has chosen to submit these issues to the Nevada Court, thus putting any related forum nonconveniens argument to rest.  See, e.g., *De La Fuente v. I.C.C.*, 451 F.Supp. 867, 871 (N.D.Ill. 1978) (holding that defendant as to whom venue is proper may not challenge venue on grounds that it is improper as to another party).

In a last-ditch effort to support his balance-of-convenience argument, Fredrick discloses that he has a residence in Massachusetts, which, as Fredrick points out, is conveniently proximate to Maine.  (Op. at 7:1-2.)  If Fredrick seriously believed that relevant to venue in this action, he should have alleged it in the Fredrick Amended Complaint.  He did not, and so should be estopped from raising it now.

The surest inconvenience would be permitting this action to proceed in this Court and then requiring SMU to join the 11 remaining Nevada defendants, each-and-every-one of whom would almost certainly challenge this Court's personal jurisdiction.  The proper vehicle for Fredrick's objection to the Nevada Action's venue is a challenge filed with the Nevada Court.  Fredrick has filed such motion, the issues underlying which are best decided by the Nevada Court.

## III.   IF THE COURT DOES NOT DISMISS THIS ACTION, IT SHOULD TRANSFER IT TO NEVADA, THE ONLY LOGICAL FORUM

As if he'd yet to read the Nevada Amended Complaint, Fredrick argues that Nevada "has no interest in this matter" and "is not convenient for any party or witness." (Op. at 8:2-5.)  Without repeating every argument in its Motion, Plaintiff reminds the Court that this action concerns defamatory statements and fraudulent conduct by and through a Nevada Corporation, whose officers (all defendants in the Nevada Action) represented to Nevada, under penalty of perjury, that their mailing addresses were located in Nevada.  Additionally, in the Nevada Action, SMU has raised claims under Nevada law, which appears to have further been broken not only by the fraudulent corporate filings but also by other fraudulent transactions by Fredrick and other

defendants. (*See* Mo. at 7:8-20 and 8:8-19.)

Fredrick's argument that this action should be litigated in Maine is especially suspect in light of his knowledge that none of the 12 defendants in the Nevada Action, including himself, has any connection to Maine, and Fredrick's prior representations in the Nevada Action that these issues should be litigated in Florida or Massachusetts. (Request, Ex. C at p. 9.) The record leaves little doubt that Fredrick's opinion as to the proper venue of this litigation varies with his procedural goals. At present, those goals appear to be the imposition of hardship and cost on SMU, and the waste of SMU and this Court's time. Accordingly, in the event the Court denies SMU's motion to dismiss, it should nonetheless transfer this action to Nevada.

## IV. FREDRICK'S DUPLICATIVE AND MANIPULATIVE ACTION CONSTITUTES AN ABUSE OF FEDERAL DECLARATORY RELIEF JUSTIFYING DISMISSAL

28 U.S.C.A. § 2201(a) is an "enabling Act" that confers a discretionary power on the courts, not an absolute right on litigants. *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004). In deciding whether to exercise jurisdiction over a declaratory relief action, courts should seek to avoid needless determination of state-law issues, discourage litigants from forum shopping, and avoid duplicative litigation. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2004); *see also Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 126 (2d Cir. 1963) (holding that declaratory judgment may not be used to remove litigation from a forum where it properly belongs). In particular, a court should decline to hear an action for declaratory judgment where it has been filed with the intention of manipulating the judicial process. *North Shore,* 152 F.3d at 642; *see also Exxon Shipping Co. v. Airport Depot Diner, Inc.*, 120 F.3d 166, 168 (9th Cir. 1997) (holding that stating that where declaratory judgment would serve an illegitimate purpose, it should not be granted).

It is difficult to imagine a more inappropriate use of the federal declaratory relief statute than this action. The Fredrick Amended Complaint amounts to a plea to save

Fredrick from having to participate in the Nevada Action, the existence of which Fredrick claims to "disparage" him and to "risk[] substantial damage to his reputation and professional standing." Fredrick filed this action knowing that it was duplicative of the Nevada Action, which, given the number of other defendants and the host of additional claims against Fredrick, would continue regardless of this Court's exercise of jurisdiction. Most illuminating, at the time Fredrick filed this action, not even he believed Maine to be a proper venue. (Request, Ex. C at p. 9.) In light of those circumstances, it is impossible to conclude other than that Fredrick intended to manipulate the judicial process to prejudice SMU.

Fredrick should not be permitted to use declaratory relief to effectively remove the Nevada Action to a court of his choosing. If Fredrick believes the Nevada Action to have been filed in the wrong forum, or the allegations raised in the Nevada Amended Complaint to be untrue, he should raise those issues with the Nevada Court, rather than engage in costly procedural games. The only harm from which Fredrick seeks relief is the specter of his being held accountable for the acts alleged in the Nevada Amended Complaint. The Court should dismiss this action so that the parties may refocus on resolving those allegations.

## V. FREDRICK'S OPPOSITION TO SMU'S MOTION IS SO LACKING IN SUBSTANCE AS TO COMPEL A CONCLUSION OF BAD FAITH

Fredrick cites two grounds in opposition to SMU's request for Rule 11 sanctions:

> Fredrick has moved to dismiss the Nevada action for lack of personal jurisdiction; and
>
> SMU has a relationship with SJC, located in Maine.

(Op. at 9:5-9.)

The first of those grounds (concerning jurisdiction) is patently irrelevant, insofar as Fredrick's belief concerning the Nevada Court's jurisdiction does not have anything to do with whether or not Maine is a proper venue. If anything, Fredrick's conduct in the

Nevada Action illustrates his insincerity in filing this action, since Fredrick has there argued that venue is proper not in Maine but in Florida or Massachusetts. (Request, Ex. C at p. 9.) Fredrick never even informed the Nevada Court that he filed this action, suggesting an attempt to game both courts to his advantage.

The second of Fredrick's cited grounds for opposing SMU's request for Rule 11 sanctions (SMU's relationship with SJC) is equally unavailing, insofar as it suggests that, in filing this action, Fredrick sought to reduce the inconvenience to SMU. As discussed above, Fredrick lacks standing to raise a venue challenge based on supposed inconvenience to SMU. In any event, it cannot seriously be argued that litigating these issues in Maine is more convenient for SMU than litigating them in Nevada, the forum chosen by SMU after a careful consideration of all the facts, including Fredrick's and the other defendants' alleged wrongdoing.

The record could not be clearer that, in filing this action, Fredrick was engaging in procedural gamesmanship, the effect of which has been to distract SMU from the Nevada Action, to impose costs on SMU, and to tax the time resources of both SMU and this Court. This Court should put a definitive end to such conduct by sanctioning Fredrick under Rule 11, including by ordering him to pay all SMU's fees and costs, including reasonable attorneys' fees, incurred in defending this action.

### V.     CONCLUSION

The record demonstrates no basis for this Court's exercise of jurisdiction over the Fredrick Amended Complaint. Fredrick's representations in the Nevada Action suggest that not even Fredrick believes Maine to be the proper venue for resolving the issues underlying the Fredrick Amended Complaint. Accordingly, and for the reasons stated above, this Court should grant SMU's Motion and dismiss this action or, in the alternative, transfer it to the Nevada Court for consolidation with the Nevada Action. In either case, the Court also should grant SMU's motion for Rule 11 sanctions, including

without limitation the payment of SMU's reasonable costs and attorneys' fees in defending this action.

///

Respectfully Submitted,

DATED: May 2, 2006.  **KRONENBERGER HANLEY, LLP**

By:  /s/ Karl S. Kronenberger

---
Karl S. Kronenberger
Terri R. Hanley
Attorneys for Defendant
ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD.

DATED: May 2, 2006.  **LAW OFFICES OF P.J. PERRINO, Jr.**

By: /s/ P.J. Perrino, Jr.

---
P.J. Perrino, Jr.
Designated Local Counsel for Defendant
ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD

## CERTIFICATE OF SERVICE

    I hereby certify that on May 2, 2006 by docket entry 06-CV-00052-DBH I electronically filed a Reply Brief in Support of Motion to Dismiss or Transfer Amended Complaint with the Clerk of the United States District Court using the CM/ECF System to all of the participants listed on the Notice of Electronic Filing attached to said docket entry under the category " **Notice will be electronically mailed to:**";

    and hereby certify that I have mailed by U.S. Postal Service the Document to the participant listed on the Notice of Electronic Filing attached to said docket entry under the category **"Notice will not be electronically mailed to:"** to the address stated therein.
**Barry A. Bachrach, Esq., Bowditch & Dewey, LLP, 311 Main Street, P.O. Box 15156, Worcester, MA 01615-0156**


Date: May 2, 2006

                                      /s/ P.J. Perrino, Jr., Esq.
                                      P.J. Perrino, Jr., Esq.
                                      Attorney for St. Matthew's University
                                      (Cayman Ltd)